UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-24798-RAR

DAVID OPPENHEIMER,

    Plaintiff,

v.

RAKONTUR LLC, *et al.*,

    Defendants.

_____/

## ORDER DENYING MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss ("Motion"), [ECF No. 10], filed on November 19, 2025.  On December 19, 2025, Plaintiff filed its Response in Opposition to Defendants' Motion to Dismiss ("Response"), [ECF No. 20], and Defendant's filed their Reply on January 16, 2026 ("Reply"), [ECF No. 27].  The Court having carefully reviewed the relevant pleadings, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion is **DENIED** as follows.

## BACKGROUND

Plaintiff David Oppenheimer ("Oppenheimer") brings this action against Defendants Rakontur LLC ("Rakontur") and William Marcus Cohen a/k/a Billy Corben ("Cohen") alleging "violations of exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 1202, to copy and distribute Oppenheimer's original copyright-protected Work of authorship after removal of his copyright management information ('CMI')."  Complaint ("Compl."), [ECF No. 1] ¶ 1.

Plaintiff Oppenheimer is an independent travel, aerial, and concert photographer, who operates Performance Impressions LLC to sell prints and commercial licensing of his work,

which includes over 500 galleries of photos taken at various events and landmarks across the United States.  Compl. ¶ 2.  Defendant Rakontur is a movie production studio located in Miami Beach, Florida, which owned and operated the website https://www.rakontur.com.  Compl. ¶ 3. Defendant Cohen is an American documentary film director who owned and operated the X account, https://x.com/BillyCorben, and the Instagram account, https://www.instagram.com/BillyCsorben/.  Compl. ¶ 3.

In 2019, Oppenheimer captured an aerial photograph of the International Links Melreese Country Club in Miami, Florida (the "Work"), adding CMI consisting of a copyright watermark in the bottom right corner reading "© *2019 David Oppenheimer*."  Compl. ¶¶ 13–14. Oppenheimer alleges that he has been the owner of the Work at all relevant times, and "has complied in all respects with Title 17 U.S.C. § 102, et seq., and all other laws governing federal copyright applicable to the Work[.]"  Compl. ¶¶ 15–16.  Indeed, prior to its first publication, on May 7, 2019, he registered the copyright with the U.S. Copyright Office, and it is now "on deposit with the U.S. Copyright Office, registered with the contents title 'International_Links_Melreese_Country_Club_golf_course_aerial_130.jpg' and . . . assigned [group registration number] VAu 1-356-215[.]"  Compl. ¶ 15; Ex. 1.

Plaintiff alleges that Defendants copied the Work, removed its CMI, and then included it in a mini-documentary "video about a controversial proposed real estate development at the International Links Melreese Country Club."  Compl. ¶¶ 3, 17–18, 24, 27.  The Work was subsequently displayed when that video was reported on by NBC Miami, CBS News, and the New York Times.  Compl. ¶ 3.  And Defendants' wide distribution of the Work "was a deliberate part of their online video and social media campaign designed to influence public opinion and city government action regarding the redevelopment of Melreese Golf Course."

Compl. ¶ 3.  Specifically, the copying and distribution of the Work was "for purposes of advertising and promoting their mini-documentary and campaign opposing the Melreese redevelopment."  Compl. ¶ 22.  But Defendants have never been licensed to use the Work for any purpose nor given permission to remove its CMI.  Compl. ¶¶ 17, 20, 24, 27.

Plaintiff discovered the unauthorized use of his Work on January 28, 2023, when Defendant Cohen posted it to his X account.  Compl. ¶ 19.  At the time of discovery, the post had already generated significant engagement, amassing numerous comments, reposts, and likes.  Compl. ¶ 19.  Thereafter, on April 16, 2024 and May 17, 2024, Plaintiff alerted Defendants to their allegedly unlawful use of the Work, but Defendants "failed to engage in any efforts to resolve the matter."  Compl. ¶¶ 6, 25.

Plaintiff claims that "[w]hen Defendants copied and displayed the Work, Defendants removed Oppenheimer's CMI from the Work [and that] these acts were committed deliberately or with reckless disregard for Oppenheimer's rights, and with the intent to induce, enable, facilitate, or conceal infringement of Oppenheimer's copyright-protected Work."  Compl. ¶ 26.  In furtherance of that claim and given that "the Work remains publicly accessible at several" websites, *see* Compl. ¶ 25,[1] Plaintiff filed the instant case against Defendants on October 17, 2025, seeking injunctive relief and damages.  *See* Compl., Prayer for Judgment.  The Complaint specifically asserts two causes of action against Defendants: (1) copyright infringement; and (2) removal of copyright management information.  *See* Compl. ¶¶ 28–42.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

[1] *See also* Compl. ¶ 3 (listing the URLs at which the Work has been displayed).

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## ANALYSIS

Defendants request that the Court dismiss the Complaint in its entirety on the grounds that the alleged copyright infringement was a fair use.  *See generally* Mot.  Plaintiff responds that this affirmative defense should not be considered at this juncture given that "fair use is not apparent on the face of the Complaint", that a number of allegations in the Complaint "preclude a finding of fair use as a matter of law", and that "the Court lacks a developed factual record concerning the purpose and character of the use."  Resp. at 4–5.  Accordingly, the question before the Court is whether Defendants' fair use defense is ripe for determination.

Affirmative defenses including fair use are "generally not properly raised at the motion to dismiss stage."  *Kobi Karp Architecture & Interior Design, Inc. v. O'Donnell Dannwolf &*

*Partners Architects, Inc.*, No. 19-24588, 2020 WL 4287005, at \*2 (S.D. Fla. July 27, 2020) (citing *Quiller v. Barclays Am./Credit, Inc*., 727 F.2d 1067, 1069 (11th Cir. 1984) (noting that "the existence of an affirmative defense will [generally] not support a motion to dismiss")). However, "[a]n affirmative defense may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim, [] only if the defense is apparent on the face of the complaint." *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985); *see also LeFrere v. Quezada,* 582 F.3d 1260, 1263 (11th Cir. 2009) ("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." (citation omitted)).

Given that the fair use affirmative defense implicates "mixed question[s] of law and fact[,]" *see Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985), courts in this District routinely find that consideration of a fair use defense is premature at the motion to dismiss stage. *See Katz v. Chevaldina*, 900 F. Supp. 2d 1314, 1316–1317 (S.D. Fla. 2012) (acknowledging the "general rule that fair use defenses are not ripe for determination before the summary judgment stage" and holding that the fair use determination "is more appropriately resolved after the complaint has been answered and parties have evaluated any need for discovery."); *Miller v. Suriel Grp., Inc.*, No. 19-24936, 2020 WL 6122246, at \*2 (S.D. Fla. July 22, 2020) ("Because a court may not make factual determinations in evaluating a motion to dismiss, and in light of the court's narrow inquiry at this stage and limited access to all potentially relevant and material facts needed to undertake the analysis, disposition of Defendant's fair use defense is inappropriate at this juncture." (internal quotations omitted)); *Kobi Karp Architecture & Interior Design, Inc.*, 2020 WL 4287005, at \*2 (holding that "[t]he Court cannot determine that the Defendants' submission of the drawings to the HPB constitutes fair use at this stage of the litigation."); *Bell v. Alexander*, No. 21-24301, 2022 WL 22824862, at

*3 (S.D. Fla. Aug. 3, 2022) ("Upon review of the First Amended Complaint, the Court does not find that a fair use defense has been identified for full consideration at this stage.").

The Court's review of Plaintiff's Complaint and the mini documentary[2] compels the same result, as Plaintiff has not set forth a *prima facie* case involving fair use.  *Id.* ("In this Circuit, unless a plaintiff adequately sets forth a *prima facie* case involving fair use in the complaint, a fair use defense is not deemed appropriate on a motion to dismiss.").  Pursuant to 17 U.S.C. § 107, courts are required to consider the following factors in evaluating whether the alleged copyright infringement was fair use: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  Each of the four factors must have a holistic, qualitative, and individual analysis."  *Id.* (citing *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1302 (11th Cir. 2018)).

---

[2]  Defendants assert in their Motion that "courts 'routinely' use the incorporation-by-reference-doctrine to 'consider videos at the motion to dismiss stage when they are central to the plaintiff's copyright infringement claims.'"  Mot. at 7 (quoting *Stebbins v. Alphabet Inc.*, No. 22-cv-00546, 2025 WL 2233208, at *3 (N.D. Cal. July 2, 2025)).  And they reply that because Plaintiff "fail[ed] to respond to this issue, [he] has conceded the point."  Reply at 2.

Defendants are correct.  Even if they hadn't raised this point, a court can *sua sponte* consider a video referenced in a complaint if the requirements of incorporation-by-reference are met.  *See Garin v. Menegazzo*, No. 21-23582, 2022 WL 1658831, at *7 (S.D. Fla. May 25, 2022) (citing *Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir. 2020) ("A document or thing is incorporated by reference into a complaint where (1) it is central to the plaintiff's claim, (2) its contents were alleged in the complaint, and (3) no party questions those contents.").

Here, the requirements of incorporation-by-reference have been met and are not in dispute.  Accordingly, the Court has reviewed the mini documentary.  *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300–01 (11th Cir. 2024) (finding the requirements of the incorporation-by-reference doctrine met where the video clearly depicted events central to plaintiff's claims and authenticity of the video was undisputed.).

Consideration of these factors underscores that Defendants' fair use defense hinges on factual determinations, which the Court is unable to make at this stage. *First*, Plaintiff maintains that Defendants' use of the copyrighted work was commercial in purpose and character. *See generally* Compl.; Resp. at 5–6. He specifically alleges that "Defendants committed the violations alleged in connection with their business for purposes of advertising and promoting their mini-documentary, increasing viewership, and influencing public response in the course and scope of their documentary and advocacy activities." Compl. ¶ 5. Further, the infringement of the Work in the "mini-documentary and related promotional campaign . . . promoted his public persona, professional profile, and associated brand, yielding ancillary reputational and commercial benefits." Compl. ¶ 3.

Defendants counter that the purpose and character of the use was both transformative and noncommercial, and that the "educational purpose of the MiniDoc weighs heavily in favor of fair use." *See* Mot. at 10-11. Though this may be true, "whether or not Defendant[s] sought financial gain . . . is unclear at this time." *Bell*, 2022 WL 22824862, at *3. Defendants maintain that "Corben posted the MiniDoc on his *personal* Twitter and Instagram accounts, which are available to viewers for free, for purposes of civic engagement and political advocacy." Mot. at 10. But the mere fact that individuals could access Defendants' social media accounts free of charge does not preclude a finding that those accounts and the content posted on them could nevertheless be monetized through other means. Defendants' argument that "[a]ny purported 'reputational benefit' []is too attenuated to be considered a 'commercial' use" is equally unavailing. Reply at 4; Resp. at 10–11. While this may ultimately prove to be true, the cases to which they cite—*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014) and *Katz v. Google Inc.*, 802 F.3d 1178 (11th Cir. 2015)—were both decided at the summary judgment stage. The Court lacks the factual record at this stage of the litigation to determine

whether consideration of the commercial and reputational benefits conferred to Defendants is warranted or whether such benefits are too attenuated. Accordingly, the first factor is inconclusive.

*Second*, "courts consider the nature of the copyrighted work and whether the work is factual or creative." *Bell*, 2022 WL 22824862, at *4. Defendants aver that "[p]hotographs that are created for non-artistic purposes have generally been found to be factual works" and that "there is nothing particularly artistic about the [Work as it] is simply an aerial shot of the Melreese golf course." Mot. at 11–12. But Plaintiff responds that "[t]his characterization ignores the creative choices inherent in professional photography [including] the angle, framing, lighting conditions, time of day, and composition of the photograph" and that "[t]he factual nature of a photograph's subject matter does not strip the photograph of copyright protection." Resp. at 7–8. Thus, "[a]t this stage, there is a clear disagreement about whether Plaintiff's work is informational or creative", which cuts against deciding fair use at this juncture. *Bell*, 2022 WL 22824862, at *4.

*Next*, "[t]he third fair use factor examines whether the amount and substantiality of the portion used was reasonable in relation to the copyrighted work as a whole." *Lagassey v. Roy*, No. 14-14303, 2017 WL 1397410, at *7 (S.D. Fla. Jan. 31, 2017). Defendants believe this factor is neutral as Corben used the entire Photo for only two seconds to display the Melreese site. Mot. at 12 (citing *Mizioznikov v. Forte*, No. 16-61616, 2017 WL 5642383, at *6 (S.D. Fla. Mar. 27, 2017) ("[B]ecause the photograph is not meaningfully divisible, the third factor weighs neither for no[r] against fair use." (internal quotations and citations omitted))). But Plaintiff points to caselaw holding that the greater the portion of the copyrighted work taken, the less likely the use qualifies as fair. Resp. at 8–9. And Plaintiff also criticizes "Defendants['] attempt to minimize their infringement", noting that "[t]he relevant question is not what portion of

Defendants' work contains copyrighted material, but rather how much of Plaintiff's copyrighted work was taken."  Resp. at 9 (quoting *Harper & Row Publishers, Inc.*, 471 U.S. at 564–65 (analyzing "the amount and substantiality of the portion used in relation to the copyrighted work").  Thus, this factor is either neutral or weighs in Plaintiff's favor.

*Finally*, as to the fourth factor, effect of the use on the potential market for the work, Plaintiff alleges that he "has suffered and will continue to suffer monetary damages, irreparable injury to his business, reputation, and goodwill, and dilution in the marketplace[.]"  Compl. ¶ 35. Plaintiff points to specific URLs of news media outlets that "reported on the infringing video Defendants produced and distributed . . . [in order] to show Defendants' wide distribution and impact."  Compl. ¶ 3.  While Defendants aver that "[t]here is no reason to believe that the MiniDoc, a completely different form of media, has usurped the market for the Photo[,]" *see* Mot. at 13, "because fair use is an affirmative defense, it is not Plaintiff's burden to show the market damage, but instead, Defendant's burden to establish fair use basis."  *Bell*, 2022 WL 22824862, at *4.

In sum, the fair use factors are all either inconclusive or weigh in Plaintiff's favor. Contrary to what Defendants suggest, the facts on record are not "sufficient to evaluate each of the [fair use] statutory factors."  Mot. at 7 (quoting *Harper & Row Publishers, Inc.*, 471 U.S. at 560).  The Court is therefore unable to determine whether inclusion of the Work in Defendants' mini-documentary constitutes fair use.  Accordingly, because this affirmative defense will benefit from further factual development, Defendants are permitted to once again raise this defense at the summary judgment stage, with the benefit of a complete record.  *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1042 (M.D. Fla. 2019) ("[Defendant] may raise its fair use defense again at the summary judgment stage.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion, [ECF No. 10], is **DENIED**. Defendants shall file an answer to Plaintiff's Complaint, [ECF No. 1], within **fourteen (14) days** of the date of this Order.

**DONE AND ORDERED** in Miami, Florida, this 12th day of June, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**